## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**Case No. _____–Civ–_____**

G.B. ANTWINE JR., MICHAEL PROSPER BURBEY, KURT
CARLSON, DEAN CINQUINO, MARGARET COYLE, DEBRA
GARCIA, WILLIAM GORHAM JR., EDDIE GOYNES,
DONALD HEARN JR., ANTHONY MICHAEL LEBEL,
DONALD LORT, VALERIE MATTHEWS, DALE
MONTGOMERY JR., DARRYL SCOTT SANDERS, MELISSA
SNYDER, ANGELA STEBBINS, JOE STEVENSON, PATTI
MARIE TIPTON, TERRENCE WEST SR., LAWRENCE
WILDES, CHRISTOPHER WOLFE, DELYNN S. YOUNG, and
JOHNNY YOUNG,

     Plaintiffs,

v.

3M COMPANY (f/k/a Minnesota Mining and Manufacturing Co.);
AGC CHEMICALS AMERICAS INC.; AMEREX
CORPORATION; ARCHROMA U.S., INC.; ARKEMA, INC.;
BASF CORPORATION; BUCKEYE FIRE EQUIPMENT
COMPANY; CARRIER GLOBAL CORPORATION;
CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.;
CHEMICALS INCORPORATED; CHUBB FIRE, LTD.;
CLARIANT CORPORATION; CORTEVA, INC.; DEEPWATER
CHEMICALS, INC.; DUPONT DE NEMOURS, INC.; DYNAX
CORPORATION; E. I. DUPONT DE NEMOURS AND
COMPANY; MINE SAFETY APPLIANCES CO., LLC.;
NATION FORD CHEMICAL COMPANY; NATIONAL FOAM,
INC.; RAYTHEON TECHNOLOGIES CORPORATION (f/k/a
United Technologies Corporation); THE CHEMOURS
COMPANY; THE CHEMOURS COMPANY FC, LLC; and
JOHN DOE DEFENDANTS 1-49,

     Defendants.

_____/

## NOTICE OF REMOVAL

     Defendant 3M Company, by and through undersigned counsel, hereby gives notice of the

removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court of

1

the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, to the United States District Court for the Southern District of Florida. As grounds for removal, 3M alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiffs seek to hold 3M and certain other Defendants liable based on their alleged conduct in designing, manufacturing, and/or selling aqueous film-forming foams ("AFFF") that Plaintiffs allege were used at various U.S. military facilities, thereby causing injury to Plaintiffs.

2.       Specifically, Plaintiffs allege that per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), were contained in Defendants' AFFF, that these substances were used at military facilities, and that these same substances caused injury to Plaintiffs.

3.      Plaintiffs allege that, while living or working at or near military facilities, they were injured by the PFAS allegedly contained in AFFF. (Compl. ¶¶ 14–15, 20–42.) AFFF sold to the U.S. military must appear on the Department of Defense ("DoD") Qualified Products List and comply with the military's rigorous specifications ("MilSpec"). Thus, to the extent that Plaintiffs allegedly were exposed to PFAS from AFFF manufactured by 3M, those PFAS derived at least in part from MilSpec AFFF. Under the federal "government contractor" defense recognized in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988), 3M is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the

Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4.     This action was filed on June 19, 2025, in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, bearing Local Case No. 2025-011720-CA-01. (Compl.) Venue is proper in this Court pursuant to 28 U.S.C. §§ 89(c) and 1441(a) because the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, is located within the Southern District of Florida. *See* State Court Record attached hereto as Exhibit 1.

5.     Plaintiffs have not served 3M as of this date. Removal is timely pursuant to 28 U.S.C. § 1446(b).

6.     3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

7.     Plaintiffs generally allege that Defendants, including 3M, have designed, manufactured, marketed, distributed, and/or sold AFFF products and/or fluorinated surfactants used therein, which contain PFAS, including PFOS, PFOA, and/or their precursors. (*E.g.*, Compl. ¶¶ 5, 43.) Plaintiffs allegedly were stationed at, or resided at or adjacent to, certain military facilities (the "Sites") where they allegedly were "exposed to PFAS through daily activity and regularly consumed water containing elevated levels of PFAS" or were "exposed for many years to PFAS" as a result of "PFAS contamination at the Sites." (*Id.* ¶¶ 20–42.) Plaintiffs further allege that "the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold AFFF

products that used fluorosurfactants containing either PFOS, PFOA, or the chemical precursors that degrade into PFOS and PFOA." (*Id.* ¶ 61.) Plaintiffs allege that as a result of the alleged contamination from AFFF, they are "at a heightened risk of developing [health] conditions associated with PFAS exposure." (*Id.* ¶¶ 20–42.)

8.      Plaintiffs request Court-supervised medical monitoring funded by all Defendants, including 3M. (*Id.* ¶¶ 310–324.)

9.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties to this action, and a copy is being filed with the Clerk of the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.

10.     By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

11.     3M reserves the right to amend or supplement this Notice of Removal.

**REMOVAL IS PROPER UNDER THE FEDERAL**
**OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)**

12.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its acts taken pursuant to a federal officer's directions, have a causal nexus with the plaintiff's claims or injuries or are otherwise related to the action; and (d) it can assert a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Papp*

*v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

13.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construed" in favor of removal. *Isaacson*, 517 F.3d at 136.

14.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's alleged injuries are caused at least in part by MilSpec AFFF. *See, e.g., Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sep. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against 3M and other manufacturers of MilSpec AFFF). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multidistrict litigation has also found on multiple occasions

that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See* Order at 3–6, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. May 24, 2019), Dkt. No. 103 ("MDL Order 1"); Order at 3–5, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. Sep. 27, 2019), Dkt. No. 320 ("MDL Order 2"); Order at 3–6, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (D.S.C. Oct. 1, 2019), Dkt. No. 325 ("MDL Order 3"). Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

## A. MilSpec AFFF

15.     Since the late 1960s or early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted an AFFF-related patent in 1966.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

16.     The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be qualified for listing on the applicable Qualified

---

[1] Following removal, 3M intends to designate this action for transfer to the MDL.

[2] *See* U.S. Patent No. 3,258,423 (filed Sep. 4, 1963; published June 28, 1966).

[3] Don DeYoung, U.S. Navy, NRL/MR/1001--06-8951, The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available

Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

17.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

---

at https://tinyurl.com/yxwotjpg.

[5] Defense Standardization Program Off., SD-6, Provisions Governing Qualification 2 (Aug. 2019), https://tinyurl.com/y5asm5bw.

[6] *Id.*

**B.**     <u>**All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**</u>

*1.*     <u>*The "Person" Requirement Is Satisfied*</u>

18.     The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) is a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135–36.

*2.*     <u>*The "Acting Under" Requirement Is Satisfied*</u>

19.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson*, 517 F.3d at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

20.     The requirement of "acting under" federal office is met here because Plaintiffs' claims, at least in part, challenge 3M's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "lifesaving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements

in formulations" and that 3M "contributed considerably to the success of the development of AFFF."[7] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same). If 3M and other manufacturers did not provide MilSpec AFFF for use at military bases, the government would have to manufacture and supply the product itself.

21.     In designing, manufacturing and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

### 3.     *The "Under Color of Federal Office" Requirement Is Satisfied*

22.     The third requirement, that the defendant's actions were taken "under color of federal office" requires a "nexus" between the plaintiff's claims or injuries and the defendant's acts undertaken at the direction of a federal office. As with the "acting under" requirement, "[t]he

---

[7] Fulfilling the Roosevelts' Vision, *supra* note 3, at 37.

[8] *See* Defense Standardization Program Off., *supra* note 5, at 2.

hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[9] It is sufficient for a

defendant to establish a connection or association between the lawsuit and the federal office. *See*

*Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (explaining that 28 U.S.C.

§ 1442 permits removal of actions "for *or relating to* any act under color of [federal] office");

*Papp*, 842 F.3d at 813; *see also Isaacson*, 517 F.3d at 137–38 (explaining that it is sufficient if the

act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was

performing its official duties).

23.     Here, Plaintiffs' claims arise at least in part from 3M's production and sale of AFFF

manufactured to military specifications for use at military facilities. Plaintiffs allege that the use

of PFAS in AFFF is the source of their injuries. 3M contends that the use of such chemicals in

MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF

was developed by 3M and other manufacturers to meet specifications established by the DoD.

Military installations are required to employ MilSpec AFFF. The design choices Plaintiffs are

attempting to impose via state tort law would create a conflict in which 3M could not comply with

both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see*

*also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use

of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1,

at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims [defendant]

manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . .

finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5

(finding the causation element of federal officer removal satisfied where AFFF products, "for

---

[9] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

24.     Here, Plaintiffs' purported injuries arise at least in part from MilSpec AFFF. The causal connection between Plaintiffs' alleged injuries and 3M's actions under color of federal office thus is clear. It is irrelevant that Plaintiffs do not expressly contend that they have been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.     The *"Colorable Federal Defense" Requirement Is Satisfied*

25.     The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

26.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[10] Moreover, "this inquiry is undertaken whilst viewing the facts in the

---

[10] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are

light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

27.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

28.     3M has satisfied these elements for purposes of removal. The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling. Those specifications are "reasonably precise," including in requiring the use of PFAS. In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. See *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows

_____

sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

29.     With respect to the second requirement, the Removing Defendants' products have appeared on the DoD Qualified Products List,[11] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *In re AFFF Prod. Liab. Litig.*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

30.     Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[12] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, the U.S. Air Force Engineering Service Center,

---

[11] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.), Dkt. No. 1969-24).

[12] *See, e.g.*, U.S. EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts 1–6 (Nov. 4, 2002).

and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[13] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[14] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[15] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[16] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but

---

[13] *See* Edward S. K. Chian et al., Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients 1 (Oct. 1980), https://apps.dtic.mil/sti/tr/pdf /ADA136612.pdf.

[14] Dep't of the Air Force, ETL 91-4, Engineering Technical Letter: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991), https://apps.dtic.mil/sti/pdfs/ADA237594 .pdf.

[15] Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[16] *See* MIL-PRF-24385F(SH), Amend. 4, § 6.6 & tbls. I, III (Apr. 7, 2020), https:// quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts*, U.S. Dep't of Defense (Sep. 16, 2020), https://tinyurl.com/ty5ku8hp.

continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

31.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

32.     3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries to Plaintiffs that were caused in whole or in part by 3M's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

33.     In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by 3M and other defendants presents genuine issues of

fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sep. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, 3M hereby removes this action from the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, to this Court.

Dated: August 19, 2025                    Respectfully submitted,

*/s/ M. Elizabeth Roper*
M. Elizabeth Roper (Florida Bar No. 100795)
Beth.Roper@butlersnow.com
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
6022 San Jose Blvd South
Jacksonville, FL 32217
Telephone: (601) 985-4445
Facsimile: (601) 985-4500

*Attorney for Defendant 3M Company*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by mail on August 19, 2025, on all counsel or parties of record on the Service List below.

*/s/ M. Elizabeth Roper*
M. Elizabeth Roper

## SERVICE LIST

C. David Durkee
Jason P. Frank
THE DOWNS LAW GROUP, P.A.
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Telephone: (305) 444-8226
Facsimile: (305) 444-6773
ddurkee@downslawgroup.com

jfrank@downslawgroup.com
*Attorneys for Plaintiffs*

Peter Condron
Clifford J. Zatz
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
pcondron@crowell.com
czatz@crowell.com
*Attorneys for Defendant AGC Chemicals Americas Inc.*

Jennifer Simon
Alan Truitt
KAZMAREK MOWREY CLOUD LASETER LLP
1230 Peachtree Street N.E., Suite 900
Atlanta, Georgia 30309
Telephone: (404) 812-0126
Facsimile: (404) 812-0845
jsimon@kmcllaw.com
atruitt@kmcllaw.com
*Attorneys for Defendant Amerex Corporation*

Melanie Black Dubis
Charles Raynal
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 400
Raleigh, NC 27601
Telephone: (919) 835-4511
Facsimile: (919) 834-4564
charlesraynal@parkerpoe.com
melaniedubis@parkerpoe.com
*Attorneys for Defendants Archroma U.S., Inc.; and Clariant Corporation*

Heidi Levine
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-7366
Facsimile: (212) 839-5599
hlevine@sidley.com
*Attorney for Defendant Arkema Inc.*

Matt Holian

DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: (617) 406-6009
Facsimile: (617) 406-6100
matt.holian@us.dlapiper.com

John R. Wellschlager
DLA PIPER LLP (US)
650 S. Exeter Street, Suite 1100
Baltimore, MD 21202-4576
Telephone: (410) 580-4281
Facsimile: (410) 580-3001
john.wellschlager@us.dlapiper.com

*Attorneys for Defendant BASF Corporation*

Michael L. Carpenter
GRAY LAYTON KERSH SOLOMON FURR & SMITH, P.A.
Post Office Box 2636
Gastonia, NC 28053-2636
Telephone: (704) 865-4400
Facsimile: (704) 866-8010
mcarpenter@gastonlegal.com
*Attorney for Defendant Buckeye Fire Equipment Company*

Jonathan I. Handler
Keith H. Bensten
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
Telephone: (617) 345-4600
Facsimile: (617) 345-4745
jihandler@daypitney.com
kbensten@daypitney.com
*Attorneys for Defendants Carrier Global Corporation; and Raytheon Technologies Corporation (f/k/a United Technologies Corporation)*

Jonathan B. Blakley
GORDON REES SCULLY MANSUKHANI, LLP
One North Wacker, Suite 1600
Chicago, IL 60606
Telephone: (312) 619-4915
Facsimile: (312) 565-6511
jblakley@grsm.com
*Attorney for Defendant ChemDesign Products Inc.*

Liam J. Montgomery

18

WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5030
Facsimile: (202) 434-5029
lmontgomery@wc.com
*Attorney for Defendants Chemguard, Inc.; and Tyco Fire Products LP*

John Parker
Oliver Twaddell
GOLDBERG SEGALLA LLP
711 Third Ave., Suite 1900
New York, NY 10017
Telephone: (646) 292-8700
Facsimile: (646) 292-8701
jparker@goldbergsegalla.com
otwaddell@goldbergsegalla.com
*Attorneys for Defendant Chemicals Incorporated*

A. Elizabeth Sternhell-Blackwell
Stefani L. Wittenauer
Richard P. Cassetta
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Ste. 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
liz.blackwell@bclplaw.com
stefani.wittenauer@bclplaw.com
richard.cassetta@bclplaw.com
*Attorneys for Defendant Chubb Fire, Ltd.*

Katherine L.I. Hacker
BARTLIT BECK LLP
1801 Wewatta St., Suite 1200
Denver, CO 80202
Telephone: (303) 592-3141
Facsimile: (303) 592-3140
dupont@bartlitbeck.com
*Attorney for Defendants Corteva, Inc.; and DuPont de Nemours Inc.*

Kurt D. Weaver
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., Ste. 4700
Chicago, IL 60606

Telephone: (312) 704-7700
Facsimile: (312) 558-1195
kweaver@shb.com
*Attorney for Defendant Deepwater Chemicals, Inc.*

Kirk G. Warner
Clifton L. Brinson
Addie K.S. Ries
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, NC 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
kwarner@smithlaw.com
cbrinson@smithlaw.com
aries@smithlaw.com
*Attorneys for Defendant Dynax Corporation*

David R. Erickson
Brent Dwerlkotte
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
derickson@shb.com
dbdwerlkotte@shb.com
*Attorneys for Defendants E. I. Du Pont de Nemours and Company; The Chemours Company; and The Chemours Company FC, LLC*

Dominique Savinelli
HUSCH BLACKWELL LLP
120 S. Riverside Dr., Suite 2200
Chicago, IL 60606
Telephone: (312) 526-1518
Facsimile: (312) 655-1501
dominique.savinelli@huschblackwell.com
*Attorney for Defendant Mine Safety Appliances Co., LLC*

Ethan R. Ware
WILLIAMS MULLEN
1230 Main Street, Suite 330
Columbia, SC 29201
Telephone: (803) 567-4610
Facsimile: (803) 567-4601
eware@williamsmullen.com

*Attorney for Defendant Nation Ford Chemical Company*

Keith E. Smith
GREENBERG TRAURIG, LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Telephone: (215) 988-7800
Facsimile: (215) 988-7801
smithkei@gtlaw.com
*Attorney for Defendant National Foam, Inc.*